181862 Josena Dorisca v. Raymond Marchilli Good morning, your honors. Andrew Crouch on behalf of Josena Dorisca. I'd like to reserve three minutes for rebuttal. We are here on an appeal from the district court's denial of Mr. Josena Dorisca's request, petition for a writ of habeas, and specifically we'd like to start today on the Snover review, talking about the first issue in the brief, namely that of the reasonableness of the harmlessness determination by the Massachusetts Appeals Court. So, if we start there, the Massachusetts Appeals Court found that there was an error, and then they went to harmlessness. What I couldn't figure out reading the briefs was what your argument is as to how you were prejudiced by this, other than in a speculative fashion. In other words, I totally agree with you that depositions versus trial testimony have different meaning, different reasons. But what I couldn't figure out is, at the point, you knew you were dealing with sort of a hard-nosed judge who didn't seem to want to be flexible as far as moving the trial date, and he went so far as to be present when this deposition was going on and you didn't have a chance to cross-examine him. What didn't you know when you were conducting the deposition that you may later have known at trial? I couldn't figure out, you know, what was missing at that point that would have prevented you from conducting an effective cross-examination, other than maybe not just your willingness, your unwillingness to disclose your trial strategy. Here, the judge, you know, denies two Commonwealth requests to, you know, do the deposition in order to change the trial date, because the judge understands, you know, under Crawford and other Sixth Amendment case law, the importance of confrontation, especially when it comes to expert testimony. So puts it off, puts it off. And even at the time when the deposition is occurring, it's occurring over the objection of defense counsel, but also with the understanding that Dr. Springer may still be available to testify in late May or in early June. So I would suggest that defense counsel goes into this, and I think reading the transcript of the medical examiner's testimony is helpful in this respect. He doesn't go into a great deal about, you know, various points that might be able to be brought on at trial, specifically regards to trajectories, locations of bodies, talking about, more importantly, about the location, especially of the intermediate wounds. But why? That's what I'm trying to figure out. Why was that? I mean, was it just a matter of trial strategy that you didn't want to give away, or the defendant didn't want to give away, or was there a lack of information that would have allowed you to more effectively cross-examine at that point? I think it's two things. One, as I said, I think the defense attorney had the understanding that this wouldn't be the last shot at Dr. Springer. And so he was getting certain information out of it, treating it almost more like discovery than it was, you know, the final opportunity for cross-examination, and that can be debatable as to whether or not that was good strategy or not. But then, obviously, you know, putting aside the issue of live testimony versus, you know, deposition, the ability to check the mannerisms and the testimony of a particular individual. Here, this is not a case where it's overwhelming evidence against Mr. Gariska. Instead, we have a very, you know, typical situation. It's a late-night party, people have been drinking, doing other things, and, you know, there may be a half a dozen or more witnesses, none of whom seem to be able to agree on the actual facts of what happens. And their testimony changes from one occurrence to the next, to the next, to the next. So by the time we get to the deposition, that testimony is not locked in. It's not as if they speak to the police officers at the scene or right afterwards, and then some of them speak the next day and change the testimony. Then we see grand jury testimony changes. A couple of them try to change their testimony days before trial, and then they're threatened with perjury, only to come back and then, you know, say something else at trial. So we have... What does the medical examiner say that's prejudicial that no one else says? So the medical examiner, in this circumstance, what we have, as I said, we have five or six or more witnesses testifying to all manner of different things, a number of people, you know, the locations, things like that. Medical examiner comes in and is sort of the only one with any clarity here. This is where the shots are the distance from. Here's where, you know, in the limited parts of the deposition, here's a little bit about where those wounds might be, here's the stippling, here's, you know, contact... But in terms of location of anybody, what does he say? He just says intermediate, which means six inches to a couple feet. Correct. Correct. Is there any other fact he gives that... She gives that tells where anybody is? No. Right. So there's just that. And everything else is that there were gunshots, that the person was injured. But I took you to be, in your brief, focused on the medical examiner's testimony bearing on who was where. And I think part of it is the question of what could be done on cross-examination or trial with this testimony. But you seem to be... But I get the idea that maybe you could have found out a lot of great things for your case and you can't. But you're objecting to the inclusion of testimony. Well, in the first instance, because, you know, the Commonwealth had not met its burden under Barber and under Ohio v. Roberts of demonstrating unavailability. Right. And we... So now you've got to show that the inclusion of the testimony is prejudicial. I'm trying to figure out what was included in it that was prejudicial. The only thing I've heard is the M.E. testified to something no one else did, which was the distance from which the shot was fired. Well, I think the harmlessness analysis is a little bit broader than just specifically that. I think it also lacks, you know, it lacks the opportunity to do the full cross-examination. But you have to... As I understand it, that all goes to whether that lack of opportunity deprived you of a chance to undermine some fact that the inclusion of the testimony permitted which fact was prejudicial. So when I look at it, the one fact that the M.E. testifies to that no other witnesses seem to talk to, speak to, and would be authoritative about, is the distance. But I'm trying to understand, how is that testimony prejudicial to you? And what is the indication that by virtue of your lack of opportunity to challenge it, you were prejudiced by that fact coming in? Because, as the government says, you seem to have used it somewhat to your benefit. And I think that it just harkens back to Judge Thompson's point, which is that, you know, the defense counsel here is not looking to preview his case for, you know, a couple weeks out. I'm not asking, I'm asking just what... Immediate versus intermediate. That was the key point at trial, because the murder victim was on top. So, I mean, your trial theory was that if it was intermediate, it couldn't have been him. So you knew that at the point of deposition. So what, why couldn't you have effectively examined on that point? Or what was lacking about, why were you unable to effectively examine on that point? I think at that point, defense counsel could have poked around the edges there, but we did not know specifically what these witnesses were going to eventually say at trial. And, again, this is with the understanding, defense counsel had the understanding, that he would have another chance at this bite at this apple. The judge was sort of providing this as sort of a protective opportunity. But the judge even was saying, look, no, we're not going to delay the trial. We need to have this person testify. We need to have this. And then only after the third ask do we finally get the deposition. Defense counsel wants this to happen in front of the jury. While the defense, you know, while the Commonwealth's case has already progressed to the point where we've had most of the substantive witnesses talking about where they were in various points to be able to, you know, determine once his testimony is set. Because the defense is, you know, set in part after the Commonwealth presents its case, where they determine that they're going to make the case that it was indeed the cousin, Rodley, who was at a certain point. At that point, I would suggest the defense counsel isn't looking to preview that entire case in part because he, as I said, expects he's going to have another chance at this. What was the statement by the M.E. that you view as prejudicial? I think it's the, it's not any one particular statement. Well, pick one. What is, is the statement it was intermediate prejudicial? I think it's, without further explanation, I think it is prejudicial. Why? Because what could have happened with the defense fully exposed, with the understanding that it is Rodley, the questions could have been raised where in, you know, where in terms of that intermediate range could it have included this particular individual. Because we also have individuals who say the shot, you know, shots came when the person was standing. Shots came when the person was on the ground. Could this have been, if someone... But all that could be brought out, I mean, you still could have brought that out at trial even without the M.E. by just pointing out all the holes and the indeterminacy of that statement, which all goes to the breadth question of how prejudicial really is that statement, which is our issue on habeas. And I think that it all could have been brought out in sort of, in terms of just arguments and raising that just... Yeah. So that's what I mean. You need a statement that is sufficiently prejudicial from the M.E. to get past the Brecht standard. And I think that... And I'm trying to figure out what is it that you're saying the M.E. said that is of that kind of prejudicial quality. I just can't quite get a sense of what you think it is. No, I understand. Because, I mean, how can that be prejudicial when that was the theory of your case? Was prejudicial for him lacking the opportunity to have that full cross-examination because the witness was not demonstrated to be unavailable, but then was not able to testify at trial? Suppose the M.E. said he didn't do it. Your guy didn't do it. You still didn't have a chance to cross-examine, but that would not be prejudicial. Agreed. Okay. So our question is, how is this statement, that it was at intermediate range, so different from he didn't do it, that we get into the box of saying, oh, well, that's a highly prejudicial statement. So the fact that you didn't have an opportunity to challenge it is a big deal. And I'm having trouble getting a sense of what did the M.E. say that is of that kind of prejudicial quality, because it's not obvious to me that saying it was at intermediate range is all that prejudicial, precisely because it's so indeterminate. It wasn't clear who was fighting where. You kind of used it to your benefit at argument, understandably. But that hurts you with respect to Brecht, at least in my view. And I acknowledge that it's not a case where this had been on a third-degree malice, third-pronged malice argument about the nature of the wounds where you could say that is something we can point to. I think it's a little bit more amorphous than that. It's brought the larger opportunity lost to place it in the context of the existing trial evidence and specifically with regards to what the defense was going to be without preview. Are you trying to tie that statement into the prosecutor's misstatement at the end? I think that that is part of the issue. And not to – with respect to that second issue, you know, indeed, the Commonwealth then goes in in closing argument and sort of changes the nature of where, and misstates the nature of where the shootings are taking place. And I think, you know, or where the shots came from or what position Mr. Durisco was in at the time that, you know, the shot was allegedly filed. I think that all of this is part and parcel of where this harmlessness error – the harmlessness analysis goes off the rails a little bit. And I think that when you look at these two errors, and they do, I think, have some handshake to them because of, you know, in the greater context when we look at these cases and we're trying to determine, you know, whether or not the relief should be granted, you do have to consider the strength of the Commonwealth's case. And I would suggest that here there was not any particular great strength to it. And so that's what magnifies these particular errors. May it please the Court, Anna Lomelsky from the Massachusetts Attorney General's Office for the Respondent. The petitioner cannot show as to either of the two claims here that the Massachusetts Appeals Court applied a decision that was contrary to or an unreasonable application of clearly established Supreme Court law, as he must do under the HEDPA standard. Beginning with the Confrontation Clause claim, the Massachusetts Appeals Court reasonably concluded that any error in admitting the testimony the deposition testimony of the ME was harmless beyond a reasonable doubt. And the Supreme Court has identified five issues to consider in determining whether a Confrontation Clause error is harmless. The Massachusetts Appeals Court considered all of those factors here. The first of those is whether the testimony was important to the prosecution's case, which is what was discussed with Mr. Crouch. I think the Court has gotten to the crux of the issue here, which is that the petitioner hasn't pointed to anything prejudicial in the medical examiner's testimony or anything critical to the prosecution's case. The central issue in dispute at trial was the identity of the shooter. And nothing in the medical examiner's testimony really addressed that issue other than arguably this issue of the intermediate range. Well, that's pretty important, though. Well, and on that issue, if anything, it was helpful to the defense. And, in fact, the defense counsel mentioned briefly, mentioned that issue in closing, in trying to make an argument that because it was an intermediate range shot, that potentially it could have been some other person other than the petitioner who was fighting with the victim and therefore right next to him that might have been the shooter. So to the extent that issue was relevant, which we would argue would be only very peripherally, it was helpful to the defense. Am I right that when he testified it was intermediate, he said anywhere from a couple inches to a couple feet? She said two inches to two feet. That's right. Two inches would be the defendant, right? Exactly. But that's pretty prejudiced. Suppose the testimony from the medical examiner was this shot occurred at two inches. Would that be prejudicial? Would it be? Perhaps. But that wasn't the testimony here. The testimony was anything from two inches to two feet, which essentially was saying it could have been someone right next to him, it could have been someone fairly far away from him, which essentially didn't distinguish between the theory of the prosecution and the theory of the defense. So it essentially didn't matter here. Well, that sets up the question that I've been waiting to ask. Couldn't cross-examination, not necessarily a likelihood, but wasn't there a reasonable possibility that cross-examination would have resulted in the medical examiner saying it might have been two feet six inches, might even have been three feet, might even have been three feet six inches? Is there anything in the record that tells us that that could not have happened? Well, the defense counsel did pretty extensively cross-examine the medical examiner. I believe her testimony was that she couldn't distinguish exactly what it was, other than to say that it was approximately two inches to two feet. But another important point here is that there's no reason why defense counsel could not have asked those questions at the deposition. There was nothing different about the trial, nothing that happened during the trial that would have suggested that question that couldn't have been asked at the deposition. But why from the defense perspective? I'm just now thinking that a medical examiner saying it could have been two inches is itself highly prejudicial, isn't it? It's not. Why? Because if at cross-examination you could have exposed that it really couldn't have been, that would have been very helpful to the defendant, right? Well, two things. First of all, the testimony was not it was two inches away. No, but it could have been two inches. It essentially would have been the same thing as saying, I can't tell you which of the theories are right here. That's essentially what she said. But she can't rule out the prosecution's theory. But she can't rule out the defendant's theory. Okay. But the defendant, that's now said that there is some medical basis for the whole theory of the government's case. No. Well, she's not saying there's no medical basis for it. Well, right. And so at cross-examination, they might have been able to make the case to the medical examiner and make the medical examiner's proposition that it could have been two inches completely implausible, at which point that would have been very harmful to the government, wouldn't it? Essentially what she was saying was I have no opinion on that issue. Well, she did have an opinion. I have no opinion on the critical issue. She did have an opinion. Right. Two inches to two feet, that's the opinion. Right. The opinion is two inches to two feet, which means that I have no ---- Who put her evidence in? The prosecution. Yeah. Right. And who wanted in that it could have been two inches? The prosecution, because it was helpful to you. No, I mean, really, if you look at the way that the case was argued by the prosecution, there was really no reliance at all on that statement by the medical examiner of two inches to two feet. The only way ---- People don't just introduce evidence that's not relevant. No, I mean, she ---- I'm not saying that it was irrelevant. Certainly she was sort of a place setter witness who described the victim's wounds. She described the cause of death. She stated that, you know ---- Yeah. But the other question about the range, we know there's corroborating evidence about all that other stuff. But it's the range of the shot which helps to identify whether it was the defendant who was close up or it's more likely than not to be the person who was the cousin who was further away. Right. I mean, the question before you, and also just to emphasize that the issue here is whether any error had a substantial and injurious effect or influence in determining the jury's verdict. So that's a really high standard that the petitioner has to meet here. But then the question is, there are five factors. So just going back, one of those factors is what was the importance of the witness's testimony in the prosecution's case. And as Judge Barron got out earlier and discussed with Mr. Crouch, he can't point to a statement that was important to the prosecution here. There's nothing, including that intermediate range statement, that was relied on by the prosecution. That statement about intermediate range was relied on by the defense, which is not a confrontational cause issue. It was not relied on by the defense. There's nothing in the record showing the government relied on the two inches point? I don't believe so, Your Honor. It certainly wasn't. No. And if you look at the closing argument, the issue, what the judge talked about. I don't even understand how the government can argue that. How can you argue that it wasn't the evidence that the prosecution introduced wasn't relied upon? That's saying the prosecution introduced irrelevant evidence. No, Your Honor. I'm not arguing that it was irrelevant. But the prosecution introduces a number of witnesses during trial. Some are place-setter witnesses. Some are critical to actually showing guilt. And some are relied on to show the guilt of the defendant. Here, the medical examiner was really a sort of place-setter witness. She then put up a number of witnesses who described the fight, the fact that the petitioner was fighting with the defendant, the fact that his story, which he later brought out, which when he testified, was simply not credible, that nobody had seen this. Did the government advance a theory of the location of the two at the time of the shots? It wasn't, there was no issue about, for example, angles or, you know, the fact that the shooting, there was a wound in a particular place meant that the shooter was standing. The government didn't advance a theory they were on top of each other when the shots were fired? That was discussed, yes. Yeah, but so that would be inches, not feet. It's hard to be on top of each other if you're three feet apart. Right, but. So that's why the medical examiner's confirmation that medically two inches was plausible would be helpful to the government and quite prejudicial to the defendant. If you look at the way that the trial actually proceeded, the prosecutor relied on the fact that the petitioner was putting forth a defense that was not consistent with the evidence and not the distance issue, but about the fact that the petitioner was arguing that there was his cousin, who no one had seen other than him, and who had come up during this fight and shot the victim. Even the, and he also described how. But you see that, I mean, just maybe just tell me why this is wrong. The government advances a theory that they were on top of one another. Defendant advances a theory somebody shot him who came up and was not on top of him. Right. Medical examiner could testify to many things. If the medical examiner testified to this could not have been within inches, it was definitely within feet. That would be highly helpful to the defendant and bad for the government, given your theory. If they said it was only two inches, that would be very helpful to the government and bad for the defendant. But the medical examiner made clear that she couldn't make the same argument. Right, what she said is I can't tell you the government's theory is wrong. Medically, right? She said that I can't tell you which theory is right. Right, that's saying the government's theory is not medically ruled out. It's essentially saying I have nothing to say about who's right here in terms of. That's not what she said. No, she says I have something to say. It's two inches to two feet, which means that the medical evidence is inconclusive as between the two positions. So let's move on. Let's talk about the other factors here, because there isn't only one factor under the Supreme Court test there are five. There's also the fact of the extent of cross-examination. And if you look at how defense counsel cross-examined the medical examiner at the deposition, there's nothing that he did there that he couldn't have done there that he could have done at trial. And that's key here. He can't undermine her. Oh, yeah, you mean at deposition. At the deposition. He could have asked any of these questions that the court is now suggesting at the deposition. No, but he had good reason not to, right? No. Well, if he thought it was going to be at trial. He thought that. She'd be at trial. No, and that's something I want to raise. I mean, Mr. Crouch argues that he thought she'd be at trial. There's no reason to have thought that. I mean, she repeatedly said that she couldn't be there in March. And that's why she said, well, I can be there in June, I can be there in May, but I can't be there in March. And that's why they ultimately had a deposition. There was no reason for the defense counsel to expect that she would be present five days after she'd had a baby. And so, no, I mean, the defense counsel should have expected that this was his last shot. And he did expect that. And he extensively cross-examined her in court with a court reporter and with a judge present. Nothing that happened at the trial would have suggested something new or allowed him to ask a different question than he would have asked at the deposition. And then another important factor under the Supreme Court's test is the case against the petitioner. And the case against the petitioner here was very strong. The petitioner was fighting with the victim right before the victim was shot. The petitioner put forward a theory that was just not credible given the testimony. And that is what the prosecutor relied on in closing. There were witnesses that testified that the person who was fighting with the victim was the shooter. And as well, Christopher Cherry, one of the witnesses, testified that there was one person standing, there was another person on the ground. The shot came from the standing person. And then a number of the other witnesses described these two people fighting where one person was standing and one was on the ground. The testimony of the petitioner, which was that basically there was a large group that was beating him up, and then someone and then his cousin came over and shot the victim, was not corroborated by any other testimony in the case. Beyond that, the petitioner's ex-girlfriend testified that on the night of the shooting, the petitioner told her that he hadn't seen the victim for two weeks, which was clearly false. And let's not forget that the petitioner fled. Immediately after the shooting, he fled. He disappeared for almost three years to Florida. The jury could have reasonably assumed that that was not the action of an innocent person. So the case here against the petitioner was very strong. So I'd ask the court to consider all five of the factors under the Delaware v. Arzul test, as well as the deferential input standard in considering this issue. And then if the court has no other questions on that issue, just briefly on the prosecutorial misconduct claim, the standard there, again, is very deferential. There's only a constitutional violation if the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction of denial of due process. And, of course, layered on that is the deferential EDFA standard. And here, neither of the statements that the petitioner has pointed to could be argued to have infected the trial with unfairness under that standard. And the petitioner has not identified any inconsistent Supreme Court case, any case that would be inconsistent with the Massachusetts Appeals Court decision. And that, of course, is his burden here, that he must show that there was an unreasonable application of clearly established law. Just going back to the meth examiner, before you sit down, I'll tell you what is bothering me in light of the range issues. Just in the max opinion, they say the deposition testimony of the medical examiner was cumulative of other evidence in the case. And then they have a footnote where they list it. And I guess my difficulty is, in what sense was the testimony by a medical examiner that it could have occurred within two inches cumulative of anything? Because there just doesn't seem to be any other evidence in the case that you could really say that was cumulative of them. But maybe I'm wrong. And then if I'm not wrong, what do we do with respect to habeas review in terms of whether that's a reasonable application of the prejudice standard? Do you follow? Yes. I think the Court can reasonably assume that the Massachusetts Appeals Court was talking about the full scope of the medical examiner's testimony. And nearly all of it was cumulative. But if not all of it is, then it seems odd to say that the problem was that it was cumulative. Well, one of the factors to consider is cumulativeness. And in that case, it would be given that, it was reasonable for the Massachusetts Appeals Court to point out that of the 50 or 60 pages of deposition testimony, probably 55 of them were cumulative. The emergency room doctor testified about the wounds, about the cause of death. The medical records were introduced. There were the photos that had been reviewed by the medical examiner during her deposition. We got all that. The question is, what was cumulative about distance? No, I mean, I agree that there wasn't another witness who testified on that point. Okay. So then if that part wasn't cumulative, and I understand you have an argument that as long as it's mostly cumulative, we should treat it as cumulative for purposes of brevity. Suppose I thought that wasn't right. What follows if the MAC makes a ruling that something's, finds no harmless error because something's cumulative, and then we're of the view the record shows it was not, in fact, cumulative? Do we then do de novo review? Or just what happens under the habeas standard in that instance? No, I mean, the ultimate issue is still whether there was harmless error. And that's just one of the factors to consider. And if this court, this court should still defer. I said overall, but that's just a factor that goes the other way. Correct. Yeah. Thank you. I think, as Your Honors have touched upon, proximity is important here. And I think that when we look at the scope of the Commonwealth's evidence against Mr. Deriska, what we have is not just evidence that these two are fighting, but there's, which puts him directly there and oftentimes underneath or within very close proximity to the victim. But we have other individuals, I would suggest that the Rodney Deriska defense is not as unreasonable as the Commonwealth might suggest. There are multiple individuals who, some of whom are just unrelated witnesses who testify that there are, you know, multiple people nearby, seven to nine people nearby, you know, multiple people. And those are, you know, Marcia Gellin and Samuel Vixma and Pierre Dorostant. You know, these are individuals who aren't necessarily involved with any of the parties. And I don't know that it's unreasonable to think that, you know, Mr. Deriska, you know, Rodney, is not someone who's necessarily known to these folks. But, you know, it's dark. The circumstances are that there are multiple people there. All those other witnesses are expert witnesses, but wouldn't they be witnesses as to distance? And is that what the MAC is referring to when they talk about cumulative? There was other evidence of distance. I would think not, because, you know, the best of the evidence suggests that an individual, and as I said, multiple of these witnesses testify as to all sorts of different things, that everyone's on the ground, that one person's standing, that both people are standing. But to the extent that we can gain some knowledge from any one particular witness, they testify, you know, that someone is standing up and then shoots or that they see sparks and they never see who exactly is doing it. But here I'd suggest that when we're talking about proximity and we're talking about, you know, two feet is one thing, but as the court has narrowed down to, two inches is a whole different story. You know, that is not going to be, by any stretch of the evidence, including Mr. Deriska's own testimony in his defense, that that's going to be Mr. Dorostant. That's going to be the defendant. That's going to be the petitioner in this case. And I think that, you know, as the court has honed in on, is what causes the substantial prejudice for the lack of opportunity to cross-examine a witness who the comelot did not demonstrate at the time was unavailable.  Thank you, Your Honor.